**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KIM EMILE, ARIELLE EMILE, and A.C.E., a
minor child,

    Plaintiffs,

  v.

ETHICAL CULTURE FIELDSTON SCHOOL,
JESSICA L. BAGBY, NIGEL FURLONGE,
CARL ANHALT, KYLE WILKIE GLASS, and
"JOHN AND JANE DOES," said names being
fictitious and intended to represent individual
employees, staff, teachers, and personnel of
Ethical Culture Fieldston School,

    Defendants.

Civil Action No.: 1:21-cv-03799-JPO

Hon. J. Paul Oetken

**DEFENDANTS' MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

    A.    The Parties Settle on July 31, 2022 but Plaintiffs Have a Change of Heart ........... 2

    B.    Defendants Move to Enforce the Parties' Settlement ............................................ 4

    C.    The Court Grants Defendants' Motion to Enforce the Settlement ......................... 6

    D.    Plaintiffs Continue to Disclaim the Settlement .................................................... 8

ARGUMENT ................................................................................................................. 10

I.    PLAINTIFFS' BAD FAITH AND VEXATIOUS CONDUCT WARRANTS SANCTIONS .................. 11

    A.    Plaintiffs' Efforts to Disclaim the Settlement Agreement Were Meritless
        and Undertaken for an Improper Purpose ............................................................ 11

    B.    Plaintiffs Refuse to Abide by This Court's Order That the Settlement is
        Enforceable ........................................................................................................ 13

II.    DEFENDANTS ARE ENTITLED TO FEES AND COSTS RESULTING FROM
    PLAINTIFFS' VEXATIOUS BEHAVIOR ............................................................................ 14

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bernard v. Galen Group*,
    901 F. Supp. 778 (S.D.N.Y. 1995)......................................................................14

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)......................................................................10, 11, 14

*Enmon v. Prospect Capital Corp.*,
    675 F.3d 138 (2d Cir. 2012)......................................................................11, 12

*Harper v. Nevada Property 1, LLC*,
    552 F. Supp. 3d 1033 (D. Nev. 2021)..........................................................11, 12, 13, 15

*In re Cendant Corp.*,
    260 F.3d 183(3d Cir. 2001)......................................................................11

*International Technologies Marketing, Inc. v. Verint Systems, Ltd.*,
    991 F.3d 361 (2d Cir. 2021)....................................................10, 11, 12, 13, 14

*LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*,
    2017 WL 2414805 (S.D.N.Y. June 2, 2017) ..................................................15

*New York Wheel Owner LLC v. Mammoet Holding B.V.*,
    2021 WL 2660439 (S.D.N.Y. June 29, 2021) ................................................10

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986)......................................................................10

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
    587 F. Supp. 2d 548 (S.D.N.Y. 2008)............................................................14

*Schlaifer Nance & Co. v. Estatwe of Warhol*,
    194 F.3d 323 (2d Cir. 1999)......................................................................10

*Shafii v. British Airways, PLC*,
    83 F.3d 566 (2d Cir. 1996)......................................................................10

*Winston v. Mediafare Entertainment Corporation*,
    777 F.2d 78 (2d Cir. 1985)......................................................................6

*Wolters Kluwer Financial Services, Inc. v. Scivantage*,
    564 F.3d 110 (2d Cir. 2009)......................................................................11

*Young v. United States*,
    481 U.S. 787 (1987)......................................................................11

## DOCKETED CASES

*Mason v. Ethical Culture Fieldston School*,
    No. 23-cv-1402-JPO (S.D.N.Y. Feb. 20, 2023) ...................................................5

*Wright v. Ethical Culture Fieldston School*,
    No. 23-cv-1874-JPO (S.D.N.Y. Mar. 3, 2023) ...................................................5

## INTRODUCTION

This case settled on July 31, 2022.  That should have been the end of the matter.  Instead, in the year since this case settled, Plaintiffs Kim, Arielle, and Austin Emile—through new counsel—have engaged in a meritless and bad faith campaign to disclaim the settlement and unwind the parties' agreement.  As a result, Defendants have expended substantial time and resources seeking to enforce the settlement.  Those resources should have been spent furthering Defendants' educational mission and supporting Fieldston students—including funding financial aid scholarships, progressive programming for students, and faculty development.  Even now, after the Court has enforced the parties' settlement, Plaintiffs have shown that, despite the Court's clear order, they do not intend to comply with the terms of that settlement.  Among other things, Plaintiffs' recent public filings opposing their former counsel's motion to collect their charging lien vitiate the material confidentiality terms of the settlement by revealing the amount of the parties' settlement consideration, the one aspect of the settlement that even Plaintiffs agree is covered by the agreement's confidentiality provision, *see* ECF No. 147 at ¶ 26.

Plaintiffs' conduct cannot be excused, and the Court should exercise its inherent authority and impose sanctions on Plaintiffs.  Defendants recognize that sanctions are a serious remedy and do not request them lightly.  But sanctions are warranted in light of Plaintiffs' continued bad faith disregard for their binding settlement and this Court's order enforcing that agreement and in recognition of the harm Defendants have suffered from this conduct.  Defendants respectfully request that the Court require Plaintiffs to pay the attorney's fees and costs that Defendants expended in litigating the enforceability of the settlement, or some other monetary penalty that the Court deems fair.  Defendants also respectfully request that the Court order compliance with

the terms of the settlement—including the material confidentiality terms—on penalty of further sanctions.

## BACKGROUND

### A.    The Parties Settle on July 31, 2022 but Plaintiffs Have a Change of Heart

The background of this case is well known to this Court.  Plaintiffs filed suit on May 3, 2021.  ECF No. 6.  At the time, Plaintiffs were represented by counsel at The Cochran Firm ("TCF").  Although Defendants vigorously disputed Plaintiffs' claims, Defendants engaged in extensive good faith settlement discussions with Plaintiffs throughout the litigation in an effort to resolve the claims and to conserve resources for all parties and the Court.  In particular, Defendants sought to conserve resources vital to ECFS's educational mission.  Each year, ECFS's revenue and expenses are budgeted net to zero—meaning that all revenue is spent on direct program expenses, including financial aid scholarships, development of progressive programming for students, and faculty development.  Resources spent on litigation diminish ECFS's ability to realize its educational mission.

Following extensive litigation and settlement negotiations, Defendants offered to settle the matter, and the parties reached a binding, enforceable settlement agreement to resolve all claims in this litigation on July 31, 2022—just hours before Kim Emile's deposition was set to begin.  *See* ECF No. 134 (enforcing settlement agreement).  The July 31 email outlined the "material terms" of the agreement—namely, "(1) payment to Plaintiffs; (2) release of Plaintiffs' claims; and (3) confidentiality and non-disparagement."  *Id.* at 3; *see also* ECF No. 76-1 (Plaintiffs' then-counsel confirming via email on July 31, 2022 that "[w]e have an agreement on [these] terms").

After the parties agreed to enter into a binding settlement, they sought to further memorialize that agreement.  Defendants sent a draft settlement agreement to Plaintiffs on

August 18, 2023, which reflected the material terms that the parties had agreed to on July 31, 2022.  That same day, Plaintiffs' then-counsel at TCF forwarded the draft to all three Plaintiffs, indicating that he "won't respond to [Defendants] until we hear from you guys."  ECF No. 147-2; *see also* ECF No. 147 at ¶ 28 (Kim Emile's declaration acknowledging that "On August 18, 2022, Mr. Sells sent me a draft of a settlement agreement.").  Plaintiffs returned the agreement to Defendants on August 25, 2022, with what TCF counsel described as "minor edits" and requested that Defendants "return a signature copy for execution by the plaintiffs as soon as possible."  ECF No. 129-1 at 2.  Plaintiffs did not propose any edits to the scope of the confidentiality and non-disparagement obligations in the draft agreement.  *Id.* at 5.  On September 2, 2022, defense counsel emailed the final, execution version of the settlement to Plaintiffs' then-counsel (the "September 2 agreement").  ECF Nos. 78-2, 78-3, 78-4.  Following exchange of the September 2 agreement, and despite Defendants' efforts to follow up in the ensuing weeks, Plaintiffs did not return the executed settlement agreement to Defendants.

After a month of near silence from Plaintiffs, Defendants filed a letter with the Court on October 4, 2022, requesting leave to move to enforce the parties' settlement agreement.  ECF No. 69.  The Court scheduled a conference on Defendants' pre-motion letter for October 7, 2022.  ECF No. 71.  At that conference, the Court asked Plaintiffs' TCF counsel, Derek Sells, if the parties had reached a settlement agreement.  Mr. Sells responded that "[w]e have no nonfrivolous reason to object to the fact that there is a settlement."  Oct. 7, 2022 Tr. at 4:2-3.  Both Kim and Arielle Emile were present at the conference and did not object to their counsel's statement.  *Id.* at 2:15-19, 4:2-3.  Although Plaintiffs had represented through their counsel that they had no "non-frivolous reason" to oppose the settlement, Mr. Sells requested "some time … to confer further with our client and with defense counsel to see if we can resolve this matter."  *Id.* at 3:10-

12.  Defendants did not object and the Court granted that request.  *Id.* at 4:10-11, 5:5-7.

Subsequently, on October 14, 2022, Plaintiffs filed a letter with the Court, reiterating that they

had "no non-frivolous basis to object to the defendants [sic] letter motion" seeking leave to

enforce the parties' settlement.  ECF No. 72.

      **B.**       **Defendants Move to Enforce the Parties' Settlement**

      Despite this critical admission—that there was "no non-frivolous reason to object to the

fact that there is a settlement"—Plaintiffs continued to refuse to execute the parties' agreement.

Rather than signing, Plaintiffs cut off communication with Defendants and retained new counsel,

Nathaniel Smith and John Lenoir, to challenge the settlement agreement.  Plaintiffs' obstruction

forced Defendants to move to enforce the settlement agreement on November 15, 2022.  ECF

No. 74.  On November 21, 2022, Plaintiffs' new counsel wrote to the Court requesting a

conference and a stay of briefing on Defendants' motion to enforce.  ECF No. 80.  The Court

held a conference on December 1, 2022.

      At that conference, Plaintiffs' new counsel, Mr. Smith, represented to the Court that

Plaintiffs "never authorized" their former counsel at TCF to accept the confidentiality and non-

disparagement provisions of the binding settlement agreement.  Dec. 1, 2022 Tr. at 4:13-17, 5:2-

5.  Mr. Sells, who was also present at the conference, disputed Mr. Smith's representation that

TCF did not have authority to accept the terms of the settlement on behalf of Plaintiffs and

requested the Court's permission to "make a submission that is *ex parte* to show that what

[Plaintiffs' counsel] has just alleged is a fraud on the Court."  *Id.* at 6:17-24; *see also id.* at 7:9-

11 ("The statements that Mr. Smith has made, those representations, are false.  I have written

communications that can prove it.").  The Court granted TCF's motion to make an *ex parte*

submission.  *Id.* at 7:12, 22-23.  TCF also confirmed that it was asserting a charging lien and a

retaining lien against Plaintiffs.  *Id.* at 8:10-11, 22-24.  The Court adjourned the date for

Plaintiffs to respond to Defendants' motion to enforce the settlement pending TCF's *ex parte*

submission and the Court's review.  *Id.* at 12:10-14.

In the months following the conference, Mr. Smith filed two additional lawsuits against

ECFS and various individual defendants alleging similar claims as the Emiles.  *See Mason v.*

*Ethical Culture Fieldston School*, No. 23-cv-1402-JPO (S.D.N.Y. Feb. 20, 2023), ECF No. 1;

*Wright v. Ethical Culture Fieldston School*, No. 23-cv-1874-JPO (S.D.N.Y. Mar. 3, 2023), ECF

No. 1.  As with the Emiles, these families had previously settled their claims with ECFS while

they were represented by TCF.  Consequently, ECFS moved to enforce those settlements as well.

*Mason*, ECF No. 29; *Wright*, ECF No. 27.  Following these filings, the Court set a schedule for

the parties to complete briefing on Defendants' motion to enforce the settlement with the Emiles

and stayed the *Mason* and *Wright* cases pending resolution of that motion.  *See* ECF No. 116 &

June 28, 2023 Tr. at 4:22; *Mason*, ECF No. 41 (staying case) & June 29, 2023 minute entry

(staying case); *Wright*, ECF No. 39 (staying case) & June 29, 2023 minute entry.

Plaintiffs filed their opposition to Defendants' motion to enforce the settlement on July

12, 2023.  ECF No. 124.  In a reversal of their position in December 2022, Plaintiffs did not

argue that their former counsel lacked authority to accept the material terms of the settlement on

their behalf.  The Court had accepted Plaintiffs' representations from December 2022 and

understood, for months, that Plaintiffs intended to mount a challenge to TCF's authority to enter

into an agreement.  *See* June 28, 2023 Tr. at 14:18-15:3 (the Court asking the parties about any

challenge to TCF's authority to accept the settlement).  But Plaintiffs never mounted such a

challenge.  *See* July 24, 2023 Tr. at 7:23-24 (Mr. Smith: "for purposes of this motion, we have

not taken the position that Mr. Sells lacks authority."); 10:1-5 (The Court: "when Mr. Smith

- 5 -

ultimately filed his opposition many months later to the motion to enforce settlement, he did not

rely on the authority issue, so it was a different -- obviously it was a changed theory of getting

out of the settlement.  We are where we are.").  Instead, Plaintiffs' opposition to Defendants'

motion essentially conceded that The Cochran Firm had authority to enter into the settlement all

along.[1]

Defendants responded to Plaintiffs' opposition on July 19, 2023.  ECF No. 128.  The

Court scheduled a telephonic conference for July 24, 2023, to discuss the motion.

### C.       The Court Grants Defendants' Motion to Enforce the Settlement

The Court granted Defendants' motion to enforce the settlement at the July 24, 2023,

conference.  July 24, 2023 Tr. at 5:22-24 ("I'm going to enforce the settlement that was reached

and as indicated in an email.  There's no question about it."); *id.* at 11:10 ("This is an

enforceable agreement.").  The Court concluded that "[t]he material terms were reached" on July

31, 2022, and thus "the *Winston* [*v. Mediafare Entertainment Corporation*, 777 F.2d 78 (2d Cir.

1985) as amended Jan. 9, 1986))] factors call for enforcement of that settlement."  July 24, 2023

Tr. at 5:24-25.  The Court held that the confidentiality and non-disparagement provisions were

"enforceable."  *Id.* at 11:10-13.  The "only question," the Court stated, was whether the precise

"language of the confidentiality and non-disparagement provisions in the 'draft agreement' …

exchanged [on September 2]" were what the parties "reasonably … expected" when they agreed

to settle.  *Id.* at 5:16-21.  The Court thus instructed the parties to confer on the language of the

confidentiality and non-disparagement provisions that the Court would enforce.  *Id.* at 11:10-14.

---

[1] Mr. Smith also emphasized at the July 24, 2023, telephonic conference on the motion to enforce the
settlement that Plaintiffs, "have not taken the position that Mr. Sells lacks authority."  July 24, 2023 Tr. at 7:23-24.

But there was no question that the parties agreed to confidentiality and non-disparagement provisions as material terms of the settlement, and that those provisions were enforceable.

Two days later, the Court issued an order and opinion further setting out its reasoning for granting the motion.  *See* ECF No. 134.  That order reiterated that the confidentiality and non-disparagement provisions were "material terms" of the agreement to which the parties agreed to be "bound."  *Id.* at 3.  As to those provisions, the Court noted that the parties had "expressed some optimism that they could agree on specific language regarding confidentiality and nondisparagement" and thus had until August 14, 2023, to confer and submit a joint status letter to the Court.  *Id.* at 5 n.3.

The Court also noted that it was "[s]ignificant[]" that "Plaintiffs, through their new counsel, … , do not contend that Plaintiffs' prior counsel acted outside his actual or apparent authority in accepting the material terms communicated by Defendants on July 31, 2022."  ECF No. 134 at 5.  This was "in contrast to the position that Mr. Smith took when he first appeared for Plaintiffs in this case."  *Id.* at 5 n.2.  The Court further stated that the *ex parte* submissions made by Mr. Sells in December 2022—which consisted of his communications with Plaintiffs— "support Mr. Sells' position (now conceded by Plaintiffs through Mr. Smith) that he acted with his clients' authority in agreeing to the terms of the settlement reached on July 31, 2022, including those requiring confidentiality and non-disparagement."  *Id.*

Following the July 24 conference, the parties engaged in discussions over the reasonable scope of the confidentiality and non-disparagement provision in their binding settlement agreement.  As the parties informed the Court on August 14, 2023, however, they were unable to reach agreement.  ECF No. 143.  Defendants' position—as stated in the parties' August 14 joint status letter to the Court—remains that the confidentiality and non-disparagement terms as set

out in the September 2, 2022, execution version of the parties' agreement are well within the

"norm of what would reasonably be expected when agreeing … to 'confidentiality and non-

disparag[ement].'"  *Id.* at 1-2 (quoting July 24, 2023 Tr. at 5:19-21) (alterations in original).  In

the interest of a good-faith effort to compromise and resolve this matter, though, Defendants

proposed to Plaintiffs several modifications to these provisions.  *See id.* at 2.  Plaintiffs rejected

Defendants' proposal.  *Id.*

### D.    Plaintiffs Continue to Disclaim the Settlement

Meanwhile, on July 26, 2023, Plaintiffs' former counsel at TCF filed a motion to enforce

their charging lien against Plaintiffs in light of the Court's order enforcing the parties'

settlement.  ECF No. 135.[2]  On August 16, 2023, Plaintiffs filed their opposition to TCF's

motion, and cross-moved to compel arbitration.  ECF Nos. 145, 146.[3]  Plaintiffs' filings reveal

their continued refusal to recognize the settlement as enforceable and abide by its terms.

Plaintiffs inject their August 16 filings, as well as their September 5 reply in support of their

cross-motion to compel arbitration, with improper attacks on the enforceability of the settlement.

*See, e.g.*, ECF No. 164 at 4 (referring to the Emiles' argument that the parties' agreement was

"only an agreement to agree and that a binding agreement could only be reached based on a

writing signed by all parties").[4]

Plaintiffs' filings also violated the confidentiality terms of the settlement.  In particular,

Plaintiffs' August 16 brief and Kim Emile's accompanying declaration publicly disclosed the

---

[2] Defendants have taken no position on TCF's charging lien or on the ongoing fight between TCF and Plaintiffs.  *See* ECF No. 144 (Defendants' response to TCF's motion to enforce charging lien).

[3] TCF filed its reply in support of its motion to enforce its charging lien and in opposition to the cross-motion to compel arbitration on August 29, 2023.  ECF Nos. 161, 162, 163.

[4] Nearly all of Plaintiffs' allegations of "misconduct" by TCF relate to TCF's agreeing to—and then declining to oppose—the settlement.  *See* ECF No. 164 at 5 (arguing that TCF acted "against the interests" of the Emiles by not opposing Defendants' motion to enforce the settlement).  This is simply another attempt to disclaim the settlement in disguise.

percent of the settlement consideration that TCF would receive pursuant to its retaining fee and the amount by which Plaintiffs believe that fee should be reduced so as to increase their recovery from the settlement.  *See, e.g.*, ECF No. 146 at 4 (discussing amount of counsel's fee), 7 (discussing counsel's fee as a percentage of the settlement); ECF No. 147 at ¶¶ 24, 31, 32, 38, 50.  Any inquiring member of the public could easily discern the total dollar amount of the settlement from this information.  These revelations are particularly inexcusable in light of the Court's ruling that the amount of settlement consideration is confidential and will remain under seal in public filings in this case.  *See* ECF No. 134 at 2 n.1 ("[T]he Court finds that the privacy interests in maintaining the confidentiality of the settlement amount are strong here, given that the parties agreed to a duty of confidentiality.").  And even Kim Emile acknowledged in her declaration that Plaintiffs agreed that the amount of settlement consideration would be protected from public disclosure by the settlement's confidentiality provision.  *See* ECF No. 147 at ¶ 47 (stating that Plaintiffs "consented" to "the monetary term set forth in the July 31 email and a provision providing for confidentiality of the monetary term of the settlement.").  Although Plaintiffs' counsel—at the request of defense counsel—moved to seal Plaintiffs' cross motion for arbitration and supporting papers to give the parties the opportunity to agree on redactions (ECF No. 148), the damage was done.  The filings were on the public docket, unredacted, for over 12 hours.[5]

> After more than a year of meritless efforts to unwind the parties' binding settlement, Plaintiffs continue to disclaim the settlement and have now violated terms that this Court has ruled are material and binding on the parties.  Enough is enough.

---

[5] Kim Emile's declaration also makes clear that she and her children have every intention of openly disparaging Defendants, despite the Court's ruling that the parties had agreed to non-disparagement as a material term of their binding settlement.  She states: "Other than the agreement to keep the settlement amount confidential, neither I nor either of my children ever agreed to not disparage the School."  ECF No. 147 ¶ 26.

## ARGUMENT

Sanctions are warranted against Plaintiffs.  The inherent authority to impose sanctions is part of the Court's power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (internal quotation marks omitted).  This authority "must be exercised with restraint and discretion," *id.* at 44, but sanctions are appropriate "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *id.* at 45-46 (cleaned up).  "Bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."  *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (internal quotation marks omitted).  Sanctions can "be made against an attorney, a party, or both."  *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *see also N.Y. Wheel Owner LLC v. Mammoet Holding B.V.*, 2021 WL 2660439, at *3 (S.D.N.Y. June 29, 2021).

A court may issue appropriate orders and impose sanctions pursuant to its inherent power when it finds that litigants have abused the judicial process.  *See Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996).  This includes pressing a claim that lacks a colorable basis, *International Technologies Marketing, Inc. v. Verint Systems, Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021), but the Court's inherent power also "extends to a full range of litigation abuses." *NASCO*, 501 U.S. at 46 (explaining that a court's "inherent power" to sanction reaches beyond other sanctioning mechanisms, which are limited to "certain individuals or conduct").  A district court may sanction a litigant for "both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not … merely the disruption of court proceedings.  Rather, it was disobedience to the orders of the Judiciary,

regardless of whether such disobedience interfered with the conduct of trial.'" *Id*. at 44 (quoting *Young v. United States*, 481 U.S. 787, 798 (1987)) (alterations in original); *see also In re Cendant Corp.*, 260 F.3d 183, 200 (3d Cir. 2001) ("Certainly, a violation of the confidentiality order would constitute 'conduct which abuses the judicial process,' and could justify a sanction.").

Plaintiffs have abused the judicial process in two ways. *First,* Plaintiffs have needlessly prolonged the litigation—at tremendous cost to Defendants and the Court—by disclaiming the existence of an obviously valid settlement agreement. *Second*, Plaintiffs have refused to comply with the settlement, despite this Court's clear order that it is enforceable. Plaintiffs' bad faith and vexatious conduct have deprived Defendants of key benefits for which they bargained when they settled this matter on July 31, 2022. Sanctions are justified.

## I.     Plaintiffs' Bad Faith and Vexatious Conduct Warrant Sanctions

### A.     Plaintiffs' Efforts to Disclaim the Settlement Agreement Were Meritless and Undertaken for an Improper Purpose

Plaintiffs' sanctionable behavior began almost immediately after they changed their minds and regretted their decision to settle. "Attempts to renege on a valid settlement agreement lend themselves to" a finding of sanctionable bad faith or improper behavior. *Harper v. Nevada Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1046 (D. Nev. 2021); *see also id.* at 1046 n.13 (collecting cases). When imposing monetary sanctions, courts in this Circuit must make two findings: first, that "the challenged claim was without a colorable basis," and second, that "the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Verint*, 991 F.3d at 368 (quoting *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)). The first finding "is satisfied where the claim 'lacks any legal or factual basis.'" *Id.* (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)). The second

"may be inferred when an action is 'so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose.'" *Id.* (quoting *Enmon*, 675 F.3d at 143) (alteration in original).  It is now clear that Plaintiffs never had a valid legal or factual basis to disclaim their then-counsel's assertion on July 31, 2022, that "[w]e have an agreement on the terms you detailed below," ECF No. 76-1, and that their efforts to prevent enforcement of a settlement were improperly motivated by their change of heart regarding their agreement to enter into that settlement.  Both of the requisite findings are satisfied here.

*First*, there was no valid legal or factual basis for Plaintiffs to claim that the parties had not reached a fully binding settlement agreement.  Plaintiffs knew that, on July 31, 2022, their then-counsel said in no uncertain terms that the parties had "an agreement on the terms you detailed below," ECF No. 76-1, and agreed to cancel Plaintiffs' depositions, the first of which was to begin the next morning, and suspend further fact discovery, *see* ECF No. 134 at 3.  And despite their efforts to walk this back in their recent filings, *see supra* n.2, Plaintiffs have conceded that TCF had authority to accept those terms and to settle on their behalf, *see* ECF No. 124 (raising no argument about TCF's actual or apparent authority to settle in Plaintiffs' opposition to motion to enforce settlement); *see also* July 24, 2023 Tr. at 7:23-24.  Absent any question of authority, there was no nonfrivolous legal basis to resist the conclusion that the parties had settled the matter.  In short, Plaintiffs "knowingly advanc[ed] a frivolous argument"—that there was no binding settlement agreement—"for months."  *Harper*, 552 F. Supp.at 1048; *see also* July 24, 2023 Tr. at 15:23-25 (The Court: "Mr. Smith has not backed up any argument that Mr. Sells did not have the authority to enforce a settlement.").

*Second*, Plaintiffs' actions were "so completely without merit as to require the conclusion that [their conduct] must have been undertaken for some improper purpose.'" *Verint*, 991 F.3d at

368.  Courts under similar circumstances have not hesitated to sanction meritless efforts to

disclaim binding settlement agreements.[6]  For example, in *Harper v. Nevada Property 1, LLC*,

the court sanctioned the plaintiff after finding that the arguments made against the existence of

the settlement agreement were frivolous, and plaintiff's stated reasons for opposing the

agreement—alleged misunderstandings about certain provisions, including a confidentiality

provision—were not credible.  *See* 552 F. Supp. 3d at 1051.  So too here.  As explained above,

Plaintiffs had no colorable legal or factual grounds to oppose the settlement and yet persisted in

disclaiming their binding agreement because they had a change of heart.  This conduct has

caused Defendants and the Court to needlessly expend resources on this dispute—resources that

Defendants could have used to advance ECFS's educational mission and support Fieldston

students.

### B.      Plaintiffs Refuse to Abide by This Court's Order That the Settlement is Enforceable

Sanctions are also warranted because Plaintiffs have refused to abide by the terms of the

settlement, despite the Court's order that the settlement is binding and enforceable.

Most notably, Plaintiffs refuse to abide by the settlement's confidentiality provision.

Plaintiffs repeatedly revealed on the public docket the amount of settlement consideration that

Defendants agreed to pay Plaintiffs.  *See* ECF No. 146 at 4 (disclosing the dollar amount of

TCF's fee); *id.* at 7; ECF No. 147 at ¶¶ 32, 38 (disclosing the percentage of the total settlement

amount to which TCF is entitled.). [7]  Plaintiffs' disclosures evince their continued bad faith

---

[6] There are, of course, circumstances where objecting to another party's claim that a matter has settled is meritorious (including, for example, when there are credible claims as to an attorney's actual or apparent authority to agree to settle on their client's behalf).  No such circumstances were present here.

[7] The Court is still determining the precise scope of the confidentiality provision, but Plaintiffs' recent submissions to the Court run afoul of their stated position that the provision should at the very least be "understood to mean that the terms of the settlement agreement (*such as the amount of the payment*) are to remain secret."  ECF No. 124 at 22 (emphasis added).

approach to the parties' settlement—beginning with their meritless attempt to renege on the

settlement agreement and continuing through their disregard of its material terms. *See Bernard*

*v. Galen Grp.*, 901 F. Supp. 778, 784 (S.D.N.Y. 1995) (sanctioning party for disclosing specific

dollar amounts in an effort to curtail mediation process, which party had opposed "from the

outset").[8]

## II.    Defendants Are Entitled To Fees and Costs Resulting From Plaintiffs' Vexatious Behavior

The Court's inherent power includes "the ability to fashion an appropriate sanction for

conduct which abuses the judicial process." *NASCO*, 501 U.S. at 44-45. Among other things,

the Court may "impose monetary sanctions against a litigant (or its counsel) for misconduct."

*Verint*, 991 F.3d at 367. "Such an award serves two ends: it 'vindicat[es] judicial authority,' and

it makes the wronged party 'whole for expenses caused by his opponent's obstinacy.'" *Id.*

(alteration in original). The Court may impose non-monetary sanctions as well: It has a "great

deal of discretion" when "fashioning a remedy pursuant to its inherent equitable powers." *Pure*

*Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 570 (S.D.N.Y. 2008).

Plaintiffs' behavior warrants a monetary sanction. Specifically, Defendants respectfully

request that the Court order Plaintiffs to pay Defendants the attorney's fees and costs Defendants

were forced to expend in litigating the enforceability of the settlement. Because "[Plaintiffs']

litigation conduct is the definition of bad faith," "Defendant[s] should not be forced to absorb the

resulting attorneys' fees incurred." *Harper* 552 F. Supp. 3d at 1052; *see also id.* (imposing

---

[8] Kim Emile's recent declaration to the Court also states a clear intent to disparage Defendants, despite the Court's ruling that the parties' binding settlement includes a non-disparagement provision. She states on the record that, "[N]either I nor either of my children ever agreed to not disparage the school." ECF No. 147 at ¶ 26.; *see also id.* (arguing that a "key aspect" of any "acceptable terms of any settlement" would allow Plaintiffs to disparage Defendants); *id.* at ¶ 29 (making plain the desire to encourage claims against the Defendants). Here, Kim Emile says the quiet part out loud: she and her children have every intention of disparaging Defendants, ignoring the Court's order that the non-disparagement provision is a material, enforceable term of the settlement agreement.

sanctions in the form of attorney's fees for meritless arguments attempting to disclaim

settlement).  Indeed, this Court has previously exercised its inherent authority to impose

sanctions in the form of attorney's fees and costs.  *See LifeTree Trading Pte., Ltd. v. Washakie*

*Renewable Energy, LLC*, 2017 WL 2414805, at *3 (S.D.N.Y. June 2, 2017).  It should do so

again here.

        In addition, Defendants request that the Court order Plaintiffs and their counsel to comply

with the settlement's terms, on penalty of further sanctions.

## CONCLUSION

        Plaintiffs' misconduct has resulted in very real harm to the ECFS community.  All of the

resources spent litigating this matter *after* it was settled should have gone to financial aid,

student-centered programming, faculty development, and the like.  Enough is enough.  The Court

should grant Defendants' motion for sanctions and award penalties against Plaintiffs to

Defendants in the form requested above.[9]

---

[9] Should the Court grant this motion, Defendants will submit a declaration with detailed contemporaneous time and disbursement records to establish and substantiate the amount of fees and costs that were incurred in connection with litigating the enforceability of the parties' settlement.

Dated: October 6, 2023
     New York, New York

Respectfully submitted,

*/s/ Alan E. Schoenfeld*
Alan E. Schoenfeld
Debo P. Adegbile
Robert L. Boone
Alyson Zureick
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

Allyson T. Slater
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State St.
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
allyson.slater@wilmerhale.com

*Attorneys for Defendants Ethical Culture
Fieldston School, Jessica L. Bagby, Nigel
Furlonge, Carl Anhalt, and Kyle Wilkie-Glass*