UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM EMILE, *et al.*,

                       Plaintiffs,

-v-

ETHICAL CULTURE FIELDSTON SCHOOL, *et al.*,

                       Defendants.

21-CV-3799 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

    This case involves claims of discrimination and retaliation under federal and state law against the Ethical Culture Fieldston School ("ECFS") and certain of its employees. The Plaintiffs are two students who recently attended the school and their mother.

    When Plaintiffs commenced this lawsuit, they were represented by The Cochran Firm ("TCF") pursuant to a retainer agreement, which provided that TCF was entitled to a contingency fee of 40% of any favorable settlement or jury award. On behalf of Plaintiffs, TCF negotiated a settlement agreement with Defendants, confirming the key terms of the agreement by email with Defendants' counsel on July 31, 2022. Counsel for the parties then proceeded to exchange drafts of a written agreement. Plaintiffs, however, refused to sign a written agreement. Plaintiffs retained new counsel, Nathaniel B. Smith, who filed an appearance on the docket in November 2022.

    Defendants filed a motion to enforce the settlement agreement. In a telephone conference held on July 24, 2023, the Court determined that the parties had reached a Type I settlement agreement and intended to be bound by the material terms of their agreement: (1) payment to Plaintiffs; (2) release of Plaintiffs' claims; and (3) confidentiality and non-disparagement. (ECF No. 137 ("July 24, 2023 Tr.") at 11:11-13.) Following the telephone conference, the Court

1

issued a memorandum and order dated July 26, 2023, further explaining its reasoning for concluding that the parties had entered into an enforceable settlement agreement. *Emile v. Ethical Culture Fieldston Sch.*, No. 21-CV-3799, 2023 WL 4763233 (S.D.N.Y. July 26, 2023) (ECF No. 134).

During the July 24, 2023 telephone conference, counsel for the parties expressed some optimism that they would be able to reach agreement on the specific language regarding the confidentiality and non-disparagement terms in light of the Court's determination that the July 31, 2022 settlement was a binding agreement. The Court therefore directed the parties to submit a joint letter with proposed language for these two provisions. (July 24, 2023 Tr. at 20:2-5.) The parties submitted a joint letter on August 14, 2023, stating their positions on the confidentiality and non-disparagement provisions, and representing that they were unable to reach agreement on either provision. (ECF No. 143.) On November 13, 2023, the Court ordered the parties to submit a further joint letter with each side's "best and final" proposed language for the confidentiality and non-disparagement terms. (ECF No. 169.) The parties filed a further joint letter on November 21, 2023. (ECF No. 171.)

The Court must now resolve four issues. First, the Court must determine the specific language of the confidentiality and non-disparagement terms of the parties' agreement. In addition, presently before the Court are three motions: (1) TCF's motion to enforce a charging lien (ECF No. 135); (2) Counsel Nathaniel Smith's opposition to TCF's motion to enforce the charging lien and cross-motion to compel arbitration regarding attorney's fees (ECF No. 145), and (3) Defendants' motion for sanctions against Plaintiffs (ECF No. 165).

I.     **The Terms of the Settlement Agreement**

In their November 21, 2023 joint letter, the parties represent that they have reached agreement on the final proposed language of the confidentiality provision, which the Court hereby adopts.  Accordingly, the parties shall be bound by the following:

> *Confidentiality*.  All terms and conditions of the parties' settlement agreement, including but not limited to the settlement amount, are confidential and shall not be disclosed or revealed by the parties or their counsel, except in the following circumstances: (1) By the Parties to their 'Related Persons,' attorneys, auditors, tax preparers, financial consultants, and/or regulators in the event that that party determines, in its sole discretion, that such disclosure is necessary; (2) By any of the Parties if necessary to enforce or litigate over any provision of their settlement agreement; and (3) To the extent required by law.

The parties have failed to reach agreement on the language of the non-disparagement provision.  Their failure to reach agreement on precise terms, however, does not preclude enforcement.  Where the parties "did intend a contract, the court is obligated to fill any gaps their [a]greement contains, if it reasonably is able to do so."  *B. Lewis Prods., Inc. v. Angelou*, No. 01-CV-530, 2005 WL 1138474, at *6 (S.D.N.Y. May 12, 2005); *see also Lee v. Joseph E. Seagram & Sons, Inc.*, 552 F.2d 447, 453 (2d Cir. 1977) ("Many a gap in terms can be filled, and should be, with a result that is consistent with what the parties said and that is more just to both of them than would be a refusal of enforcement"); *Baker v. Robert I. Lappin Charitable Found.*, 415 F. Supp. 2d 473, 484 (S.D.N.Y. 2006) (Chin, J.) ("Where essential terms are missing, . . . the court must consider whether the missing terms can be supplied in a reasonable fashion consistent with the intent of the parties."); RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981) ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.").

With respect to non-disparagement, the Court has reviewed the parties' proposals and has considered what is reasonable under the circumstances.[1] The Court adopts, and the parties shall be bound by, the following:

> *Non-Disparagement*. The Parties shall not publicly make or communicate to any person or entity any Disparaging (as defined below) remarks, comments, or statements concerning any other Party, including by way of the Internet, social media, or otherwise (including, but not limited to, Facebook, Twitter, or LinkedIn). For purposes of this provision, "Disparaging" remarks, comments, or statements are those that tend to impugn the character, physical or mental condition, honesty, integrity, morality, business acumen, or abilities of the individual or entity being disparaged.

Having determined the language of the confidentiality and non-disparagement provisions, the Court turns to other issues the parties raise in their November 21, 2023 joint letter. Specifically, Plaintiffs raise several issues related to the terms contained in Section 4 of the September 2, 2022 draft written agreement. (ECF No. 76-2.) Plaintiffs contend that "all the other terms and provisions in Section 4 that the Defendants appear to be seeking—including a non-cooperation clause, draconian enforcement provisions, arbitration of all future disputes, fee-shifting, and a punitive and unenforceable liquidated damages clause—should be rejected." (ECF No. 171 at 2-3.) Defendants contend that these terms "are part of any reasonable understanding of the terms to which the parties agreed and should be adopted by the Court in its final order on the parties' binding settlement agreement." (ECF No. 171 at 3.) In its July 26, 2023 order, the Court found that it was unnecessary at that juncture for the Court to decide

---

[1] Plaintiffs have failed to comply with this Court's November 13, 2023 order, which directed each side to provide its "best and final" proposed language for confidentiality and non-disparagement terms. Plaintiffs have not submitted proposed language for a non-disparagement term. Instead, they have raised various issues with the breadth of both provisions, while simultaneously asking the Court to enforce "reciprocal confidentiality and non-disparagement clauses." (ECF No. 171 at 3.) By declining to offer specific language as ordered by the Court, Plaintiffs have likely waived or forfeited a challenge to the terms adopted by the Court.

4

whether the specific terms in the September 2, 2022 draft written agreement were so unreasonable that they were beyond what the parties reasonably anticipated in their July 31, 2022 agreement, because it is the July 31, 2022 agreement that the Court found enforceable.  *Emile*, 2023 WL 4763233, at *3 (ECF No. 134 at 5).  As this Court explained during the July 24, 2023 telephone conference, "[t]he only question is with respect to the language of the confidentiality and non-disparagement provisions in the [September 2, 2022] 'draft agreement' that then gets exchanged, whether those . . . go outside the norm of what would reasonably be expected when agreeing in theory to 'confidentiality and non-disparag[ement].'  That's all there is."  (July 24, 2023 Tr. at 5:16-21.)

As explained above, this Court has already determined that the parties reached an enforceable settlement agreement on July 31, 2022, that consists of three terms that the Court will enforce: (1) payment to Plaintiffs; (2) release of Plaintiffs' claims; and (3) confidentiality and non-disparagement.  The Court now adopts the definitions of confidentiality and non-disparagement set forth above.  The Court declines to enforce any additional provisions, as the parties are not bound by the additional terms contained in the September 2, 2022 draft written agreement.  *See Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 153 (2d Cir. 2022).

## II.     TCF's Motion to Enforce its Charging Lien

TCF moves to enforce its charging lien under New York's Judiciary Law § 475.  New York Judiciary Law § 475, which "governs attorneys' charging liens in federal courts sitting in New York," *Itar-Tass Russian News Agency v. Russian Kurier, Inc*., 140 F.3d 442, 448 (2d Cir. 1998), provides that, "[f]rom the commencement of an action . . . in any court . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final

5

order in his or her client's favor, and the proceeds thereof in whatever hands they may come . . . . The court upon the petition of the client or attorney may determine and enforce the lien."

Plaintiffs oppose TCF's motion on three grounds.  First, Plaintiffs contend that TCF engaged in misconduct and failed to faithfully represent Plaintiffs.  (ECF No. 146 at 10.)  Plaintiffs have waived this argument.  As the Court explained in its order dated July 26, 2023, "Plaintiffs, through their new counsel, Nathaniel B. Smith, [did] not contend that Plaintiffs' prior counsel acted outside his actual or apparent authority in accepting the material terms communicated by Defendants on July 31, 2022." *Emile*, 2023 WL 4763233, at *3 (ECF No. 134 at 5.)  The Court further noted that this was in contrast to the position that Mr. Smith had taken earlier when he first appeared for Plaintiffs in this case.  (ECF No. 87 at 4-5.)  As a result of that contention, the Court permitted Plaintiffs' prior counsel, Mr. Sells, to submit communications with his clients to the Court on an ex parte basis.  Because Plaintiffs conceded that Mr. Sells acted with his clients' authority, the Court did not need to rely on those communications.  However, the Court noted that those communications supported Mr. Sells' position that he acted with his clients' authority in agreeing to the terms of the settlement reached on July 31, 2022.  Because the Court has already determined that Mr. Sells acted with his clients' authority when he entered into the settlement agreement, and because Plaintiffs have waived any argument to the contrary, the Court rejects Plaintiffs' contention that the Court should not enforce the charging lien due to alleged misconduct on the part of TCF.

Second, Plaintiffs contend that TCF is required to submit evidence of the reasonable value of its services, and that the fee sought is unsupported and unconscionably high.  (ECF No. 146 at 7.)  Mr. Sells submitted his firm's contemporaneous billing records on June 28, 2023.  (ECF Nos. 112, 113.)  Plaintiffs contend that when a client discharges an attorney without cause,

6

the amount provided in the retainer agreement is "not dispositive"; rather, "the attorney is entitled to recover compensation from the party measured by the fair and reasonable value of the services rendered," which the Court must determine by considering the factors relevant to the *quantum meruit* fee analysis.  (ECF No. 146 at 8.)  *See Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 457 (1989).  "Among the factors to be considered in such an analysis are the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)."  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998).  It is true that "[w]hen the attorney-client relationship is terminated in the midst of the attorney's representation, counsel's entitlement to fees is no longer governed by the terms of the retainer agreement.  Rather, except in limited circumstances, the attorney is entitled to be paid in quantum meruit for the reasonable value of his services."  *Casper v. Lew Lieberbaum & Co.*, No. 97-CV-3016, 1999 WL 335334, at *5 (S.D.N.Y. May 26, 1999), *adhered to on reconsideration*, 182 F. Supp. 2d 342 (S.D.N.Y. 2002).  But this is not a situation in which the attorney-client relationship was terminated in the "midst" of the attorney's representation.  Rather, as this Court has concluded, the parties reached a settlement on July 31, 2022.  The 40% contingency fee fixed in the retainer agreement is therefore dispositive in determining the amount of the fee owed to TCF.  In any event, having also reviewed TCF's contemporaneous billing records (ECF Nos. 112, 113), the Court concludes that a 40% contingency fee is fair and reasonable considering the factors enumerated above.

Third, Plaintiffs contend that this issue should be resolved in arbitration because the retainer agreements provide that any "fee dispute" will be resolved through arbitration.  (ECF No. 146 at 6.)  The arbitration provision is plainly inapplicable to the circumstances here.  The

7

purpose of a fee arbitration is to contest the amount of an attorney's fee or an attorney's entitlement to a fee in the event of attorney misconduct. Neither scenario is applicable here. The amount of the fee is 40% of the recovery, as fixed in the retainer agreement. And as explained above, Mr. Sells and TCF acted with their clients' authority in agreeing to the terms of the settlement reached on July 31, 2022.

Accordingly, TCF's motion to enforce its charging line is granted, and Plaintiffs' cross-motion to compel arbitration is denied.

**III.    Defendants' Motion for Sanctions**

Defendants move for sanctions against Plaintiffs on the ground that Plaintiffs "engaged in a meritless and bad faith campaign to disclaim the settlement and unwind the parties' agreement," requiring Defendants to "expend[] substantial time and resources seeking to enforce the settlement." (ECF No. 166 at 1.) Defendants request that the Court require Plaintiffs to pay the attorney's fees and costs that Defendants incurred in litigating the enforceability of the settlement, and that the Court order that Plaintiffs comply with the terms of the settlement on penalty of further sanctions. (*Id.* at 1-2.)

A federal court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). To impose sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). "[A] claim is entirely without color when it lacks any legal or factual basis." *Schlaifer Nance & Co.*, 194 F.3d at 337 (internal citation and quotation marks omitted).

"Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Id.* (internal citation and quotation marks omitted). The Second Circuit has "interpreted the bad faith standard restrictively." *Eisemann*, 204 F.3d at 396. "The court's factual findings of bad faith must be characterized by a high degree of specificity." *Schlaifer Nance & Co.*, 194 F.3d at 338 (internal citation and quotation marks omitted). Bad faith "may be inferred when an action is so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (internal citation and quotation marks omitted).

At this time, the Court cannot reach the conclusion satisfactorily that Plaintiffs acted in bad faith. As Plaintiffs themselves are not lawyers, it is entirely possible that they were not acting in bad faith but did not understand the settlement process. It is also unclear what role Mr. Smith may have had in pursuing Plaintiffs' misguided effort to get out of their settlement—a matter that cannot be determined without invading the attorney-client privilege. Because the Court cannot reach the conclusion with sufficient confidence that Plaintiffs acted in bad faith, Defendants' motion for sanctions is denied without prejudice to renewal if Plaintiffs or their counsel further prolong the implementation of the parties' settlement agreement.

IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that:

1. The Cochran Firm's motion to enforce its charging lien is GRANTED;

2. Plaintiffs' cross-motion to compel arbitration is DENIED;

3. Defendants' motion for sanctions is DENIED without prejudice;

4. The parties' settlement agreement is hereby ENFORCED as follows:

a) Defendants shall pay Plaintiffs the agreed-upon settlement amount, minus The Cochran Firm's 40-percent fee, within 45 days;

b) Defendants shall pay The Cochran Firm its 40-percent fee within 45 days;

c) The parties shall comply with the confidentiality and non-disparagement terms set forth above;

d) Defendants are hereby released from all claims asserted in this action, which claims are hereby DISMISSED with prejudice, as well as any claims arising out of or relating to the facts alleged in this action;

e) This Court shall retain jurisdiction to enforce the parties' settlement agreement.

The Clerk of Court is directed to close the motions at ECF Nos. 135, 145, and 165, and to close this case.

SO ORDERED.

Dated: March 21, 2024
New York, New York

_____
J. PAUL OETKEN
United States District Judge